No. 24-12543-CC

# In the United States Court of Appeals for the Eleventh Circuit

---

JONATHON HOWARD BECK,
*Appellant*

v.

UNITED STATES OF AMERICA,
*Appellee*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
D.C. NOS. 20-CR-00137-CG-B, 24-CV-00016-CG-B (HON. CALLIE V.S. GRANADE)

---

BRIEF OF APPELLEE UNITED STATES

---

SEAN P. COSTELLO
  United States Attorney
  Southern District of Alabama

SCOTT A. GRAY
  Assistant United States Attorney
  Southern District of Alabama
  63 South Royal Street, Suite 600
  Mobile, Alabama 36602
  (251) 441-5845

## <u>CERTIFICATE OF INTERESTED PERSONS</u><br><u>AND CORPORATE DISCLOSURE STATEMENT</u>

*United States v. Jonathon Howard Beck,* No. 24-12543-CC

Pursuant to 11th Cir. R. 26.1-1, the United States adopts Jonathon Howard Beck's Certificate of Interested Persons and adds the following party:

Gray, Scott A. – Assistant United States Attorney

## STATEMENT REGARDING ORAL ARGUMENT

This Court may decide this appeal without oral argument.  In this appeal, this Court will decide whether the district court properly denied Jonathon Howard Beck's ("Beck's") post-conviction challenge to his guilty plea without an evidentiary hearing. To resolve this appeal, this Court may apply its post-conviction precedent to a straightforward factual record that turns substantially on Beck's responses during his plea colloquy.  Thus, the United States submits that oral argument is unnecessary.

# **TABLE OF CONTENTS**

Page

CERTIFICATE OF INTERESTED PERSONS ..........................................................C1

STATEMENT REGARDING ORAL ARGUMENT ....................................................i

TABLE OF CONTENTS ............................................................................................ii

TABLE OF AUTHORITIES ..................................................................................... iv

STATEMENT OF JURISDICTION ......................................................................... vii

STATEMENT OF THE ISSUE ................................................................................. 1

STATEMENT OF THE CASE .................................................................................. 2

    A. Course of Proceedings ................................................................................. 2

    B. Disposition Below.......................................................................................... 9

    C. Statement of Facts ....................................................................................... 9

    D. Standards of Review .................................................................................. 10

SUMMARY OF ARGUMENT ............................................................................... 12

ARGUMENT AND CITATIONS OF AUTHORITY ............................................. 13

The Record Conclusively Refutes Beck's Ineffective Assistance Claim........................ 13

    A. Beck's Representations in the Plea Colloquy Confirmed that his
       Attorney Complied with the Constitution ............................................................ 15

    B. The Record Contradicts Beck's Claim that he would have Demanded a Trial. 20

CONCLUSION .................................................................................... 26

CERTIFICATE OF COMPLIANCE ................................................................. 27

CERTIFICATE OF SERVICE ......................................................................... 27

# TABLE OF AUTHORITIES

## U.S. Supreme Court Cases

*Anders v. California*, 386 U.S. 738 (1967) .............................................................. 7

*Blackledge v. Allison*, 431 U.S. 63 (1977) ....................................................... 16, 20

*Hill v. Lockhart*, 474 U.S. 52 (1985) ................................................................ 13, 21

*Lee v. United States*, 582 U.S. 357 (2017) ......................................... 14, 21, 24, 25

*Strickland v. Washington*, 466 U.S. 668 (1984) ................................................... 13

*United States v. Dominguez Benitez*, 542 U.S. 74 (2004) ...................................... 16

## Federal Appellate Cases

*Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) ................... 17

*Chandler v. United States*, 218 F.3d 1305 (11th Cir. 2000) (*en banc*) ................... 14

*Ivory v. United States*, 153 F.4th 1358 (11th Cir. 2025) .................................. 21, 25

*Martin v. United States*, 949 F.3d 662 (11th Cir. 2020) .................................. 10, 14

*Osley v. United States*, 751 F.3d 1214 (11th Cir. 2014) ................................... 20, 21

*Riolo v. United States*, 783 F. App'x 917 (11th Cir. 2019) (unpublished) ................ 17, 19

*Ritchie v. United States*, 112 F.4th 1344 (11th Cir. 2024) .................................... 11

*Timson v. Sampson*, 518 F.3d 870 (11th Cir. 2008) ............................................ 22

*United States v. Adams*, No. 23-10190, 2023 WL 8812588 (11th Cir. Dec. 20, 2023).... 23

*United States v. Buckles*, 843 F.2d 469 (11th Cir. 1988) ..................................... 18

iv

*United States v. Dixon*, 901 F.3d 1322 (11th Cir. 2018) ..................................................... 22

*United States v. Hernandez*, 107 F.4th 965 (11th Cir. 2024) ............................................... 23

*United States v. Medlock*, 12 F.3d 185 (11th Cir. 1994) ................................... 16, 17, 18, 22

*United States v. Monroe*, 353 F.3d 1346 (11th Cir. 2003) ................................................... 15

*United States v. Patterson*, 595 F.3d 1324 (11th Cir. 2010) ................................................ 14

*United States v. Rogers*, 848 F.2d 166 (11th Cir. 1988) ...................................................... 16

*United States v. Sanderson*, 595 F.2d 1021 (5th Cir. 1979) ................................................ 17

*United States v. Wright*, 33 F.3d 1349 (11th Cir. 1994) ...................................................... 23

\* *Winthrop-Redin v. United States*, 767 F.3d 1210 (11th Cir. 2014) ............. 14, 16, 17, 18, 19

**Statutes**

18 U.S.C. § 924(c)(1)(C) ...................................................................................................... 23

18 U.S.C. § 924(c)(1)(D) ................................................................................................. 22, 23

21 U.S.C. § 841(b)(1)(A)(viii) ............................................................................................. 23

28 U.S.C. § 2253 ................................................................................................................. vii

28 U.S.C. § 2255 ................................................................................................................... 2

28 U.S.C. § 2255(a) ....................................................................................................... vii, 14

28 U.S.C. § 2255(b) ............................................................................................................. 14

**Other Authorities**

11th Cir. R. 26.1-1 ............................................................................................................... C1

v

Fed. R. App. P. 32(a)(7)(B)(i) ........................................................... 27

Fed. R. App. P. 4(a)(1)(B) .............................................................. vii

Fed. R. Crim. P. 11(b) ................................................................... 15

U.S. Const. amend. VI .................................................................. 13

U.S.S.G. § 1B1.3 ......................................................................... 23

U.S.S.G. § 5G1.1(b) .................................................................... 24

## STATEMENT OF JURISDICTION

The district court had jurisdiction to consider Beck's collateral attack pursuant to 28 U.S.C. § 2255(a). This Court has jurisdiction over this appeal because Beck filed a timely notice of appeal within 60 days of the district court's entry of final judgment, and a judge of this Court granted a certificate of appealability on an issue. Fed. R. App. P. 4(a)(1)(B); 28 U.S.C. § 2253.

## <u>STATEMENT OF THE ISSUE</u>

Did the district court find correctly that the record foreclosed Beck's post-conviction challenge to his guilty plea when it denied the motion without an evidentiary hearing?

## STATEMENT OF THE CASE

Beck pleaded guilty to drug and gun charges.  [Doc. 48, 1; Doc. 80, 9–11].  Under oath at his plea colloquy, Beck confirmed that he had discussed the charges and the plea agreement with his attorney and was content with the advice he had received.  [Doc. 80, 4].  He also indicated that he chose to plead guilty of his own free will and not due to threats or force.  [*Id.* at 5–6].  Subsequently, Beck changed course and asserted in a post-conviction motion pursuant to 28 U.S.C. § 2255 that his attorney rendered a constitutionally deficient performance in the plea proceedings.  [Doc. 93, 4; Doc. 93-1, 6–12].  A magistrate judge entered a report and recommendation to deny Beck's motion based on his responses during the plea colloquy.  [Doc. 100, 15–16].  The magistrate judge also found that Beck understood the terms of his plea and that any erroneous sentence estimate by counsel did not violate the Constitution.  [*Id.* at 16–22].  The district court adopted the magistrate judge's reasoning.  [Doc. 102; Doc. 103].  In this appeal, Beck argues that he was entitled to an evidentiary hearing on his § 2255 motion.  [11th Cir. Doc. 39, 15–22].  Citations reflect the pagination to the electronic docket in the district court's criminal matter and to this Court's electronic docket.

### A.    Course of Proceedings

An indictment charged Beck with several gun and drug crimes.  [Doc. 13].  Count Two charged Beck with possession of methamphetamine with intent to distribute it in July 2019, and Count Five charged Beck with possession of a firearm in furtherance of

drug trafficking in October 2020. [*Id.* at 1–4]. Count Five alleged that Beck carried the firearm in October 2020 to promote a methamphetamine distribution offense that the indictment included in Count Four. [*Id.* at 3–4]. Beck also faced a methamphetamine distribution charge from a June 2019 transaction (Count One) and another charge for carrying a firearm to promote the July 2019 distribution offense charged in Count Two (Count Three). [*Id.* at 1–3]. A penalty page warned that Count Two carried a mandatory minimum sentence of ten years and that Count Five carried a mandatory minimum consecutive sentence of five years. [Doc. 13-1, 1].

A magistrate judge appointed an assistant federal defender to represent Beck. [Doc. 7] (text only order). Beck and his attorney subsequently signed a written plea agreement in which Beck would plead guilty to Counts Two and Five. [Doc. 48, 1, 13–14]. The plea agreement stated that Beck faced a mandatory minimum sentence of ten years for the drug offense in Count Two and a mandatory minimum consecutive sentence of five years from the gun offense in Count Five. [*Id.* at 3–4]. It allowed for a possible reduction if Beck cooperated. [*Id.* at 6–11]. Beck represented that his attorney had discussed the facts of the case and available defenses with him. [*Id.* at 2]. He indicated that he was "completely satisfied with the legal advice of his attorney." [*Id.*]. Both Beck and his counsel certified that they had reviewed the plea agreement together carefully. [*Id.* at 13–14]. In exchange for Beck's guilty plea, the United States agreed to dismiss the remaining charges. [*Id.* at 6].

3

Beck and his attorney also signed a factual resume that described the circumstances of his offenses. [*Id.* at 15–18]. The factual resume described each trafficking event. [*Id.* at 16–18]. It indicated that investigators saw Beck handling a firearm as he spoke with an informant during the July 2019 drug transaction. [*Id.* at 16–17]. In addition, the factual resume described drugs and guns that law enforcement found inside Beck's home in October 2020, and Beck agreed that one or more of the guns facilitated his drug trafficking. [*Id.* at 17–18]. Beck agreed to a drug quantity of 178 grams as relevant conduct for sentencing purposes, but a footnote indicated that the parties would be bound by final totals in reports from the Drug Enforcement Administration. [*Id.* at 18 n.1].

The district court accepted Beck's plea after a plea colloquy. [Doc. 80, 11–12]. As the colloquy began, the district court told Beck that he was under oath and that any false answers could subject him to a perjury prosecution. [*Id.* at 3]. Beck indicated that he understood. [*Id.*]. During the colloquy, the district court confirmed that Beck had discussed his charges with his attorney, understood those charges, and had read and discussed the plea agreement with his attorney before he signed it. [*Id.* at 4]. He confirmed that he had not reached any agreement with the United States beyond those terms in the plea agreement. [*Id.* at 4–5]. Beck agreed that he was "fully satisfied with the counsel, representation, and advice" that his attorney had given to him. [*Id.*]. He acknowledged that no one threatened or forced him to plead guilty. [*Id.* at 5]. Instead,

4

he concurred that he was pleading guilty of his own free will. [*Id.* at 5–6].

As for his sentence, the district court admonished Beck that he would not be able to withdraw his plea if the sentence exceeded his expectations. [*Id.* at 5]. Beck responded affirmatively to reflect his understanding. [*Id.*]. The district court also reviewed the statutory penalties that Beck faced. [*Id.* at 6]. It noted that Beck faced "a minimum mandatory of ten years up to life in prison" on Count Two and that the prison sentence in Count Five would "be a minimum mandatory of 5 years consecutive to the sentence you receive in Count 2 up to life imprisonment," along with other penalties. [*Id.*]. When the district court asked Beck if he understood those penalties, he responded: "Yes, Your Honor." [*Id.*].

It also warned Beck that his sentence might differ from any estimate he received from his attorney or anyone else. [*Id.* at 7]. Beck initially asked the district court to repeat this warning. [*Id.*]. The district court reiterated that "you need to understand that the sentence ultimately imposed may be different from any estimate your lawyer or anybody else might have given you in this case." [*Id.*]. It asked Beck if he understood, and he answered: "Yes. I understand that." [*Id.*].

The district court explained the elements of the crimes to Beck and confirmed that he had adopted the factual resume in his plea agreement. [*Id.* at 9–11]. As the district court discussed the gun charge, it noted that Beck's firearm possession required a link to his drug trafficking activity but cited the trafficking offense in Count Two, not

Count Four. [*Id.* at 10]. It told Beck that "the drug amount may be somewhat up in the air" because he had waived a toxicology report. [*Id.* at 11]. The prosecutor noted that the parties had addressed that issue in footnote one of the factual resume. [*Id.*]. Beck agreed to the content of the factual resume with the caveat on the ultimate drug quantity at sentencing. [*Id.*]. He pleaded guilty to the charges. [*Id.*].

Before sentencing, a probation officer prepared a presentence investigation report (the "PSI") in Beck's case. [Doc. 56]. It noted that Beck's advisory range under the United States Sentencing Guidelines (the "Guidelines") for the drug offense would be 70 to 87 months, but it became ten years due to the statutory minimum. [*Id.* at 11]. It also indicated the gun offense required a five-year sentence that would run consecutively to the other sentence. [*Id.*]. The district court appointed a new attorney to represent Beck at sentencing. [Doc. 66] (text only entry).

At sentencing, the district court adopted the calculations in the PSI. [Doc. 82, 3]. Beck spoke at sentencing and apologized "to my country and to my family" for his actions. [*Id.* at 4]. He also indicated that he "had a lot of time to become a better reader" while he had been "locked up." [*Id.*]. Beck claimed that "now that I understand the gun charge that I signed the plea for—I'm not sure that I completely understood it whenever I did sign the plea." [*Id.*]. He argued that he possessed guns but did not use or carry them to engage in drug trafficking. [*Id.*].

The district court addressed Beck's comments as it pronounced his sentence. [*Id.* at 5]. It noted that he had been "questioned quite extensively" on the gun charge and "agreed that the factual resume was correct." [*Id.*]. Accordingly, the district court declined to revisit the guilty plea. [*Id.*]. It sentenced Beck to a total sentence of 180 months that consisted of the two statutory minimum sentences. [*Id.* at 5–6]. Thus, the sentence consisted of 120 months in prison for the drug charge in Count Two and 60 months in prison for the gun charge in Count Five. [*Id.* at 6].

After sentencing, the district court entered a final judgment. [Doc. 69]. Beck appealed. [Doc. 73]. This Court affirmed Beck's convictions and sentence after counsel moved to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967). [Doc. 91]. That decision issued as this Court's mandate. [Doc. 92].

Subsequently, Beck submitted a *pro se* motion pursuant to § 2255 that purported to assert a claim of ineffective assistance of counsel. [Doc. 93, 4]. In a separate memorandum, Beck said that his attorney pressured him to accept the United States' plea offer. [Doc. 93-1, 7–10]. He also claimed that he did not fully understand his sentence exposure. [*Id.* at 10–11]. Beck argued that he would have proceeded to trial if he had understood the statutory sentence exposure. [*Id.* at 11]. He cited his statement at allocution as evidence of that intent. [*Id.* at 12 n.8]. In a separate declaration, Beck claimed that his attorney told him in a meeting that they "had to be in court in 15 minutes" and that he "would be forced to go to trial" if he did not accept the plea.

7

[Doc. 93-2, 2]. He indicated that he pleaded guilty because his attorney said that he would receive a life sentence if he went to trial. [*Id.*]. Beck claimed that he would have proceeded to trial because he perceived that his statutory sentence exposure ultimately exceeded his Guidelines range. [*Id.* at 2–3].

The United States opposed Beck's motion. [Doc. 98]. It asserted that Beck's plea was knowing and voluntary based on his responses in the plea colloquy. [*Id.* at 6–7]. In addition, the United States pointed to the district court's explanation of Beck's sentence exposure and the lack of contemporaneous evidence that Beck would have persisted with a trial. [*Id.* at 7–9]. Beck submitted a reply brief. [Doc. 99].

After full briefing, a magistrate judge entered a report and recommendation to deny Beck's motion without an evidentiary hearing. [Doc. 100, 1]. The magistrate judge rejected each of Beck's claims and relied substantially on Beck's responses during the plea colloquy. [*Id.* at 12–23]. Beck submitted objections. [Doc. 101]. The district court overruled Beck's objections and adopted the magistrate judge's conclusions. [Doc. 102]. It entered a final judgment in the United States' favor. [Doc. 103].

Beck appealed. [Doc. 104]. A judge of this Court granted a certificate of appealability to Beck on one issue. [11th Cir. Doc. 34-2]. The Court directed the parties to address "[w]hether the district court erred in rejecting Beck's claim that his guilty plea was not knowing and voluntary due to ineffective assistance of plea counsel, without holding an evidentiary hearing." [*Id.* at 2]. This appeal followed.

### B.    Disposition Below

The magistrate judge entered a report and recommendation that rejected Beck's ineffective assistance of counsel claim without an evidentiary hearing. [Doc. 100]. The district court adopted the magistrate judge's conclusions. [Doc. 102; Doc. 103]. In this appeal, Beck argues that his allegations on his counsel's performance in the plea proceedings warranted an evidentiary hearing. [11th Cir. Doc. 39, 15–22].

### C.    Statement of Facts

A confidential informant gave Beck $500 in exchange for methamphetamine in June 2019. [Doc. 48, 16]. Law enforcement tested the substance, and a field test revealed that it was methamphetamine. [*Id.*]. The following month, the informant returned to Beck for more methamphetamine. [*Id.*]. This time, the informant sought half a pound of methamphetamine. [*Id.*]. Beck said that he could not satisfy that order, but he agreed to sell five ounces of methamphetamine for $1,500.00. [*Id.*]. The informant traveled to Beck's home. [*Id.*]. Officers equipped the informant with recording equipment. [*Id.*]. As the informant and Beck proceeded, "investigators could observe what was happening in real time, and they saw Beck handling a firearm while talking to the informant." [*Id.* at 16–17]. Beck and the informant completed the transaction. [*Id.* at 17].

Agents went to Beck's home and asked Beck to consent to a search. [*Id.*]. He did not agree, so an officer obtained a warrant. [*Id.*]. During the search, they discovered

9

"an additional ounce of methamphetamine, marijuana, drug paraphernalia, and a couple of firearms." [*Id.*].

A prosecutor sought a criminal complaint against Beck in October 2020. [*Id.*]. Agents went to arrest Beck that same month. [*Id.*]. Overnight, law enforcement "heard several gunshots coming from the residence" as they surveilled it. [*Id.*]. When they arrested Beck, they saw drug paraphernalia in plain view. [*Id.*]. They obtained another search warrant. [*Id.*]. As they searched the residential portion of this building, "they found ammunition, two firearms, marijuana, and about 10 grams of methamphetamine in addition to the drug paraphernalia." [*Id.*]. They found more guns, paraphernalia, and ammunition in an open area of the building. [*Id.*].

Beck later agreed that "[u]nder these circumstances, one or more of the firearms in the defendant's possession facilitated the defendant's drug trafficking activities by providing protection for him, the drugs[,] and drug proceeds." [*Id.* at 17–18]. He also agreed that he was accountable for roughly 178 grams of methamphetamine as relevant conduct. [*Id.* at 18]. At sentencing, the parties agreed to a recalculation of 147.6 grams. [Doc. 82, 2–3].

### D.    Standards of Review

This Court reviews the denial of an evidentiary hearing for an abuse of discretion. *Martin v. United States*, 949 F.3d 662, 670 (11th Cir. 2020). On the merits, this Court reviews legal issues *de novo* in connection with a district court's denial of a motion to

vacate and factual determinations for clear error. *Ritchie v. United States*, 112 F.4th 1344, 1347 (11th Cir. 2024). It reviews an ineffective assistance of counsel claim *de novo* as a mixed question of both law and fact. *Id.*

11

## SUMMARY OF ARGUMENT

The record clearly forecloses both elements of Beck's claim that he received ineffective assistance during his plea proceedings.  Thus, this Court should affirm the district court's denial of Beck's § 2255 motion.

First, Beck failed to establish a constitutional deficiency.  Beck's representations under oath in his plea colloquy are entitled to great weight.  At the colloquy, Beck stated that he was satisfied with his counsel's advice in the plea proceedings, agreed that no one threatened or forced him to extract a guilty plea, and confirmed that he made the decision himself.  The district court explained the mandatory minimum sentences to Beck and reinforced that the decision was a final one.  Beck now claims that many of these statements were untrue.  He presents only a self-serving declaration to support this claim.  The district court properly refused to allow such a post-plea change of heart to contradict Beck's prior sworn statements.

Second, Beck failed to prove prejudice.  Beck faced overwhelming evidence, and he received benefits when he pleaded guilty.  A trial would not have helped Beck.  The United States dropped a second gun charge that also would have carried a mandatory minimum consecutive sentence.  Beck did not produce any contemporaneous evidence that he wanted a trial.  He discussed the plea at sentencing but indicated a change of mind after the plea.  His § 2255 declaration arrived much later.  Those statements were insufficient.  This Court should affirm the district court's denial of Beck's motion.

## ARGUMENT AND CITATIONS OF AUTHORITY

**The Record Conclusively Refutes Beck's Ineffective Assistance Claim.**

The district court properly denied Beck's allegation of ineffective assistance of counsel during his plea without a hearing. It relied correctly on Beck's acknowledgments in the plea agreement and during his plea colloquy along with the lack of contemporaneous evidence that Beck wished to proceed to trial. Beck's *post hoc*, self-serving statements in his post-conviction pleadings did not create a factual dispute as to the voluntariness of the guilty plea. This Court should affirm the district court's denial of Beck's motion.

The Constitution provides most criminal defendants with a right to counsel. U.S. Const. amend. VI. This right includes access to effective representation. *Strickland v. Washington*, 466 U.S. 668, 685–86 (1984). A defendant must establish that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and that the deficiency "prejudiced the defense" to establish a Sixth Amendment violation. *Id.* at 687. *Strickland*'s standards apply to guilty plea proceedings. *Hill v. Lockhart*, 474 U.S. 52, 57–58 (1985). To establish prejudice from a guilty plea, the defendant must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. Reviewing courts should "look to contemporaneous evidence" of a defendant's preferences in connection with the

13

prejudice inquiry. *Lee v. United States*, 582 U.S. 357, 369 (2017). Ultimately, the movant must demonstrate "by a preponderance of competent evidence, that counsel's performance was unreasonable." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*).

A post-conviction collateral attack offers a vehicle for inmates to raise ineffective assistance claims. 28 U.S.C. § 2255(a); *see also United States v. Patterson*, 595 F.3d 1324, 1328 (11th Cir. 2010) (describing a § 2255 motion as the "preferred means" to resolve ineffective assistance claims). Typically, a reviewing court should hold a hearing on the motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b). If a petitioner alleges facts that would support relief if true, a court generally must hold a hearing. *Martin v. United States*, 949 F.3d 662, 670 (11th Cir. 2020). There is no need for a hearing, however, "if the allegations are patently frivolous, based upon unsupported generalizations, or affirmatively contradicted by the record." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (internal quotation marks omitted). Prior statements made under oath "are afforded great weight." *Martin*, 949 F.3d at 670.

The record unambiguously contradicts both elements of Beck's claim that he received ineffective assistance of counsel in his plea proceedings. On constitutional deficiency, the district court properly rejected Beck's ineffective assistance claim based on his admissions during the plea colloquy. Those solemn admissions under oath

14

controlled over Beck's later self-serving attempt to reverse course. As for prejudice, Beck failed to show a substantial likelihood of success at trial or identify compelling contemporaneous evidence that he wished to proceed to trial on his charges. Hence, there was no need for an evidentiary hearing. This Court may affirm on either prong, as set out below.

## A. Beck's Representations in the Plea Colloquy Confirmed that his Attorney Complied with the Constitution.

Beck did not establish a viable claim of a constitutional deficiency. His admissions during the plea colloquy confirmed his understanding of his sentence exposure and his satisfaction with his attorney's performance. Beck expressed no hesitation or claim of coercion. Given the thorough plea colloquy, Beck's statements under oath defeat his claim of ineffective assistance. Beck's self-serving declaration did not displace those admissions. This Court should affirm the denial of Beck's motion because the record clearly refutes Beck's claim that his attorney violated the Constitution.

A district court must place a defendant under oath before it accepts a guilty plea. Fed. R. Crim. P. 11(b). Then, it conducts a series of inquiries to ensure that the defendant understands the plea's impacts. *Id.* At the core, this colloquy ensures that the plea is free of coercion, the defendant understands the charges, and the defendant is on notice of the consequences of the plea. *United States v. Monroe*, 353 F.3d 1346, 1354 (11th Cir. 2003). Given its solemnity, "[t]here is a strong presumption that the

15

statements made during the colloquy are true." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). A defendant who later wishes to change course "bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).

Guilty pleas provide finality for both the prosecution and defendants. Such pleas "are indispensable in the operation of the modern criminal justice system" precisely because they offer a definitive conclusion to criminal proceedings. *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). A court should avoid "indiscriminate hearings in federal postconviction proceedings" that "would eliminate the chief virtues of the plea system speed, economy, and finality." *Blackledge v. Allison*, 431 U.S. 63, 71 (1977). Hence, a reviewing district court should not allow an inmate to attack a guilty plea lightly.

This Court signaled strongly in *Winthrop-Redin* that a defendant cannot refute admissions in the plea colloquy through a subsequent personal affidavit. 767 F.3d at 1216–17. *Winthrop-Redin* stopped short of a fixed rule, but it observed that "[t]he fact that [the movant] presented only his own affidavit bears on whether the record conclusively shows he is entitled to no relief." *Id.* at 1217. The Court concluded that the district court could "discredit a defendant's newly-minted story" about threats from a third party "when that story is supported only by the defendant's conclusory statements." *Id.* Conversely, this Court remanded a case for an evidentiary hearing

16

when a defendant offered support from a third party. *Riolo v. United States*, 783 F. App'x 917, 923 (11th Cir. 2019) (unpublished). The *Riolo* panel relied on precedent from the former Fifth Circuit that a defendant may receive an evidentiary hearing if an affidavit from "a reliable third person" supports the defendant's claims. *United States v. Sanderson*, 595 F.2d 1021, 1021 (5th Cir. 1979); *see also Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*) (treating as binding decisions of the former Fifth Circuit issued before the close of business on September 30, 1981).

In Beck's case, the plea colloquy established that Beck pleaded guilty voluntarily with full knowledge of the consequences. The district court questioned Beck meticulously about the decision at the colloquy. Beck assured the district court that he was satisfied with his attorney's representation. [Doc. 80, 4]. Moreover, the district court asked Beck a series of questions about the plea's voluntariness. [*Id.* at 4–6]. Beck responded negatively when the district court asked if someone forced him to plead guilty and again when it questioned whether anyone had threatened him. He answered affirmatively when the district court asked if he decided to plead guilty based on his own free will. Beck indicated that he understood the terms of his plea agreement. Beck's pellucid admissions under oath are entitled to "a strong presumption" of truthfulness. *Medlock*, 12 F.3d at 187. These responses indicated unmistakably that Beck made his own decision to plead guilty. They refuted his *post hoc* claims that his attorney coerced him and that he did not understand the consequences of his plea. *See*

17

*Winthrop-Redin*, 767 F.3d at 1217 (citing a defendant's admissions in the plea colloquy).

The plea colloquy also left Beck with no doubt about his sentence exposure. As the district court discussed maximum penalties, it cited the ten-year mandatory minimum for the methamphetamine charge along with the five-year mandatory minimum consecutive sentence for the gun crime. [Doc. 80, 6]. Beck agreed that he understood these consequences of the plea. [*Id.*]. He also acknowledged that he would not be able to withdraw the plea if the sentence exceeded his expectations and recognized that he could not rely on any sentence estimate. [*Id.* at 5, 7]. As with Beck's assurances that he was not coerced, this Court should presume that Beck recognized the mandatory minimum sentence provisions for his offenses. *See Medlock*, 12 F.3d at 187 (applying a presumption of truthfulness to statements in a plea colloquy). Similarly, Beck's responses evinced that he knew his guilty plea was a final decision that he could not revisit later if the sentence deviated from his predictions. *Id.*

Any pressure that Beck might have felt stemmed from his criminal predicament and not from his attorney's actions. As this Court has recognized, "[a]ll pleas of guilty are the result of some pressures or influences on the mind of the defendant." *United States v. Buckles*, 843 F.2d 469, 472 (11th Cir. 1988) (internal quotation marks omitted). Beck remains bound by his consistent responses during the plea colloquy.

Beck's self-serving declaration did nothing to displace the strong presumption of truthfulness as to those statements. He submitted the declaration over two years after

the district court accepted his guilty plea. [Doc. 80, 2; Doc. 93-2, 3]. In that declaration, Beck alleged that his attorney pressured him by overstating his sentence exposure and suggested that he would have proceeded to trial if he had been given an opportunity to study the plea agreement. [Doc. 93-2, 2–3]. His representations at the plea colloquy, however, contradicted those assertions. During that proceeding, Beck told the district court that no one coerced him to plead guilty and that he had reviewed the plea agreement with his attorney. Beck claims that his declaration created a factual dispute. [11th Cir. Doc. 39, 18–22]. He did not present the sort of "detailed factual allegations supported by third-party affidavits and other evidence" to cast doubt on his plea colloquy that the *Riolo* panel found to support remand. 783 F. App'x at 923. Instead, this Court should follow *Winthrop-Redin* and decline to set aside a guilty plea years after the fact based on self-serving allegations. 767 F.3d at 1215–20.

Reduced to its essence, Beck attempts to create a factual dispute with himself. Effectively, he asks this Court to remand his case for an evidentiary hearing to decide whether he lied in his plea colloquy or whether he lied in the declaration with his § 2255 motion. Beck offers no explanation for that stark deviation. He does not explain why he remained silent about his purported concerns or why he assured the district court of the plea's validity when he pleaded guilty. Section 2255 does not afford an inmate a path to disturb an otherwise valid guilty plea on such tenuous claims. The adoption of Beck's approach would lead to "indiscriminate hearings in federal postconviction

19

proceedings" based simply on a defendant's later contradiction of the plea colloquy. *Blackledge*, 431 U.S. at 71. Plea colloquies would lose the air of finality that give them such reliability. In Beck's case, the district court properly denied his § 2255 motion without a hearing.

To sum up, Beck has not shown a constitutional error by counsel. His representations in the plea colloquy confirmed that his attorney acted appropriately. The district court properly found that the record foreclosed Beck's later claims of a constitutional error. It did not have to order a hearing based simply on Beck's self-serving declaration. Hence, this Court should affirm the denial of Beck's motion without an evidentiary hearing.

### B. The Record Contradicts Beck's Claim that he would have Demanded a Trial.

Alternatively, this Court should affirm the denial of Beck's § 2255 motion because Beck did not demonstrate prejudice. He has not identified weaknesses in his case that would have made a trial a sound strategy. On the contrary, Beck faced overwhelming evidence and the prospect of a higher sentence. Nor has Beck pointed to any contemporaneous evidence that he seriously was considering a trial when he pleaded guilty. Beck's failure to demonstrate prejudice also is dispositive of his § 2255 motion.

To establish a claim of ineffective assistance, a § 2255 movant must establish prejudice in addition to a deficient performance. *Osley v. United States*, 751 F.3d 1214,

1222 (11th Cir. 2014).  In *Osley*, this Court declined to resolve definitively the issue of counsel's performance because the defendant "has not come close to meeting his burden under *Strickland*'s prejudice prong."  *Id.* at 1223.  When evidence of prejudice clearly is lacking, the district court may deny the motion without a hearing.  *Ivory v. United States*, 153 F.4th 1358, 1366–68 (11th Cir. 2025).

At the guilty plea phase, a § 2255 movant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill*, 474 U.S. at 59.  In many cases, the prejudice inquiry will turn on the potential trial impact of any alleged error.  *Id.*  Other considerations matter, too, as sometimes a defendant may opt to bear the risk of a trial even in the face of long odds.  *Lee*, 582 U.S. at 367–68.  Even so, the prejudice standard remains demanding, and a court should "look to contemporaneous evidence to substantiate a defendant's expressed preferences" for a trial.  *Id.* at 369.

Beck did not demonstrate prejudice.  For starters, the factual resume in the plea agreement indicated that the United States had overwhelming evidence against Beck. During the July 2019 methamphetamine transaction, officers "could observe what was happening in real time, and they saw Beck handling a firearm while talking to the informant."  [Doc. 48, 16–17].  Prior to Beck's October 2020 arrest, officers "heard several gunshots coming from the residence" as they surveilled it.  [*Id.* at 17].  They also found methamphetamine, drug paraphernalia, and guns inside the residence when they

arrested Beck.    [*Id.*].    Thus, the evidence strongly supported Beck's guilt for methamphetamine trafficking and for carrying a firearm to further the drug operation on multiple occasions.  *See United States v. Dixon*, 901 F.3d 1322, 1340–41 (11th Cir. 2018) (requiring a nexus to the trafficking to support liability under § 924(c)).

The district court confirmed with Beck that he adopted this factual resume at his plea colloquy. [Doc. 80, 10–11].  As noted above, this Court should treat that admission as true.  *Medlock*, 12 F.3d at 187.  The robust factual resume reinforces that Beck also suffered no prejudice from any inadvertent mistake when the district court linked Beck's gun charge to Count Two instead of Count Four.  As the district court explained the Count Five § 924(c) charge to Beck, it identified Count Two as the underlying drug trafficking charge.  [Doc. 80, 10].  Beck suffered no prejudice because the district court's statement made it clear that the United States had to connect his gun possession to drug trafficking, and the factual resume set out Beck's liability for both charges.  He also has not addressed this discrepancy and has abandoned any argument based upon it.  *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (recognizing that a *pro se* litigant abandons an issue if the litigant fails to argue it in the initial brief).

Indeed, Beck received a substantial sentence benefit precisely because the United States agreed that it would not pursue both § 924(c) charges.  A sentence for a violation of § 924(c) runs consecutively to any other sentence.  18 U.S.C. § 924(c)(1)(D).  As part of the plea agreement, the United States did not pursue one of the two § 924(c) charges

against Beck. That decision reduced his sentence exposure. Although Beck was not subject to a 25-year minimum for multiple § 924(c) convictions, he likely would have been subject to an additional consecutive sentence of five years. *Id.* at §§ 924(c)(1)(C), 924(c)(1)(D). This Court has indicated that such offenses run consecutively. *United States v. Wright*, 33 F.3d 1349, 1350 (11th Cir. 1994); *see also United States v. Hernandez*, 107 F.4th 965, 967–68 (11th Cir. 2024) (explaining that the First Step Act subjected § 924(c) charges in the same indictment to consecutive terms of five years per count), *and United States v. Adams*, No. 23-10190, 2023 WL 8812588, at *2 (11th Cir. Dec. 20, 2023) (following *Wright*). In short, Beck faced strong evidence against him, and his guilty plea likely yielded a shorter sentence than he would have received if he had proceeded to trial. These benefits cut against any prejudice claim.

A trial would not have benefitted Beck on the drug charge, either. Beck faced a separate mandatory minimum sentence of ten years for his drug offense because he pleaded guilty to a drug sale of five ounces of methamphetamine. That transaction exceeded 50 grams. 21 U.S.C. § 841(b)(1)(A)(viii) (providing that over 50 grams of methamphetamine is subject to a minimum sentence of ten years). To be sure, the total drug quantity attributable to Beck as relevant conduct at sentencing was uncertain at the time of Beck's plea. *See* U.S.S.G. § 1B1.3 (defining relevant conduct for sentencing purposes broadly). Beck knew about that, however, because the district court told him that the final drug quantity was "somewhat up in the air" because the parties had waived

23

a toxicology report.  [Doc. 80, 11].  Beck emphasizes this uncertainty as a reason that he would have demanded a trial.  [11th Cir. Doc. 39, 19–21].  Many of these allegations stray far beyond the narrower contentions in Beck's declaration.  Nonetheless, the record contradicts Beck's claim because he received a warning from the district court on that point.

The parties ultimately agreed to a slight reduction from 178 grams to 147.6 grams at sentencing.  [Doc. 48, 18; Doc. 82, 2–3].  That adjustment did not affect Beck's statutory sentence exposure.  It also did not impact the Guidelines range because that statutory minimum sentence became Beck's Guidelines range.  U.S.S.G. § 5G1.1(b).  Beck has not shown that a trial would have benefitted him.  After a trial, he would have faced the same statutory exposure on that charge, and a jury likely would have convicted Beck of additional drug charges, too.  Due to the strong evidence, Beck did not have a realistic prospect of a lower sentence on the drug charges at trial.

Nor has Beck shown contemporaneous evidence that he wanted a trial regardless.  Beck expressed post-plea remorse months after the plea colloquy during his allocution but based his comments on additional research that he conducted while "locked up."  [Doc. 82, 4].  Beck's record contrasts sharply with *Lee*, in which the Supreme Court found prejudice when a defendant faced deportation as a plea consequence because the defendant clearly expressed throughout the pretrial proceedings that avoidance of deportation was fundamental to any plea.  582 U.S. at

368–71.  The defendant in *Lee* unambiguously expressed his concerns about deportation during the plea negotiations and at the plea colloquy.  *Id.* at 369.  Beck did not present similar "substantial and uncontroverted evidence" that he would not have accepted the plea if counsel had advised him differently.  *Id.* at 371.

Likewise, Beck's declaration did not suffice as contemporaneous evidence, either.  Beck submitted that declaration over two years after the district court accepted his guilty plea.  [Doc. 80, 2; Doc. 93-2, 3].  Accordingly, it hardly counts as "contemporaneous evidence to substantiate" Beck's "expressed preferences" at the time of his plea.  *Lee*, 582 U.S. at 369.  Beck appears to suggest that his declaration supports prejudice.  [11th Cir. Doc. 39, 18, 21].  This argument goes nowhere because the declaration offers nothing more than "*post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies" that *Lee* signaled to be insufficient.  582 U.S. at 369.  The district court properly denied Beck's motion without a hearing because the record provides no support for Beck's claim that he would have persisted with a trial based on different advice from his attorney.  *See Ivory*, 153 F.4th at 1366–68 (affirming the denial of a motion without a hearing).

Ultimately, Beck failed to establish prejudice.  He faced overwhelming evidence and obtained benefits from his guilty plea.  Against that backdrop, Beck did not point to contemporaneous evidence of his supposed intent to proceed to trial.  His sentencing comments and later declaration were too vague and arrived too late.  This Court should

affirm the district court's denial of Beck's § 2255 motion without a hearing because he did not establish prejudice.

## **CONCLUSION**

In sum, Beck did not establish a claim of ineffective assistance of counsel in his plea proceedings.  The files and the record in Beck's case confirm that he is not entitled to relief.  Consequently, the district court properly denied Beck's motion without an evidentiary hearing.

Respectfully submitted,

Sean P. Costello
United States Attorney


 /s/ Scott A. Gray
Scott A. Gray
Assistant United States Attorney
Attorney for Appellee

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B)(i).  This brief contains 6,182 words.

 /s/ Scott A. Gray
Scott A. Gray
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on December 29, 2025, a true and correct copy of the foregoing pleading has been served by placing same in the United States mail, postage prepaid and properly addressed to: Jonathon Howard Beck, No. 12643-509, FCI Bennettsville, P.O. Box 52020, Bennettsville, South Carolina 29512.

 /s/ Scott A. Gray
Scott A. Gray
Assistant United States Attorney